UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

STARNET INSURANCE COMPANY and
BERKLEY NATIONAL INSURANCE
COMPANY,

   Plaintiffs,

 v.              CAUSE NO. 3:24-CV-597 DRL-SJF

NOTRE DAME FEDERAL CREDIT
UNION and DAVID DILLEY,

   Defendants.

OPINION AND ORDER

  StarNet Insurance Company and Berkley National Insurance Company seek a judicial declaration that their insurance policies don't require a defense or indemnification of Notre Dame Federal Credit Union for a settlement with David Dilley. Mr. Dilley filed a motion to dismiss, arguing that the court lacks subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). The court grants the motion.

  A Rule 12(b)(1) motion "can take the form of a facial or a factual attack on the plaintiff's allegations." *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 279 (7th Cir. 2020). When evaluating a facial challenge to subject matter jurisdiction, the court must accept alleged factual matters as true and draw all reasonable inferences in favor of the plaintiff. *See id.*; *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). On the other hand, a plaintiff facing a factual attack doesn't enjoy the treatment of his allegations as true. *See Bazile*, 983 F.3d at 279. In a factual attack, "the court may consider and weigh evidence outside the pleadings to determine whether it has power to adjudicate the action." *Id.* The plaintiff bears the burden of establishing the jurisdictional

requirements. *Ctr. for Dermatology and Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588-89 (7th Cir. 2014). This is not an exercise in pedantry—jurisdiction must be properly pleaded, and the court has an independent obligation to serve as a "jurisdictional hawk" in ensuring its subject matter jurisdiction. *Lowrey v. Tilden*, 948 F.3d 759, 760 (7th Cir. 2020); *see also* Fed. R. Civ. P. 12(h)(3). Because Mr. Dilley's motion tests the existence of jurisdictional facts, this is a factual attack. *Bazile*, 983 F.3d at 279.

Federal district courts have diversity jurisdiction over lawsuits brought by citizens of different states when the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. Complete diversity requires a case to be between "citizens of different States." 28 U.S.C. § 1332(a)(1). "Under the rule of complete diversity, if there are [citizens] of the same state on both sides of a lawsuit, the suit cannot be maintained under the diversity jurisdiction." *Krueger v. Cartwright*, 996 F.2d 928, 931 (7th Cir. 1993).

StarNet and Berkley assert that this court has diversity jurisdiction. 28 U.S.C. § 1332. Mr. Dilley argues that the credit union's federally-chartered status destroys diversity jurisdiction. StarNet and Berkley are Iowa citizens, and Mr. Dilley is an Indiana citizen [1 ¶ 9-12]. This motion solely hinges on NDFCU's citizenship.

Federal statutes assign state citizenship to various entities, but not federally-chartered credit unions like NDFCU. *See* 12 U.S.C. §§ 1751 *et seq.*; *see also* Paul E. Lund, *Federally Chartered Corporations and Federal Jurisdiction*, 36 Fla. State U. L. Rev. 317, 370 n.303 (2009) ("statutes governing federal credit unions include no provision regarding federal jurisdiction"). In contrast, Congress has assigned state citizenship to national banks, *see* 28 U.S.C. § 1348 (citizen of the state in which they are located); federal savings associations, *see* 12 U.S.C. § 1464(x) (citizen of the state

where its home office is located); and Fannie Mae, *see* 12 U.S.C. § 1717(a)(2)(A) (citizen of the District of Columbia). Without an explicit statutory directive, courts have used two approaches to determine the citizenship of a federally-chartered credit union. Mr. Dilley argues that neither establishes diversity here; StarNet and Berkley argue that both methods treat NDFCU as an Indiana citizen, thereby preserving diversity.

For one approach, some courts have treated federally-chartered banks like corporations and looked to their principal place of business under 28 U.S.C. § 1332. *See, e.g.*, *Navy Fed. Credit Union v. LTD Fin. Servs., LP*, 972 F.3d 344, 356 (4th Cir. 2020); *BCBSM, Inc. v. Walgreen Co.*, 642 F. Supp.3d 732, 741 (N.D. Ill. 2022). StarNet and Berkley invite the court to follow suit and find that NDFCU has its principal place of business in Indiana under 28 U.S.C. § 1332(c)(1), which says "a corporation shall be deemed to be a citizen of ever State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business."

But this approach strays from § 1332's plain language—a federally-chartered credit union isn't a corporation in the sense of § 1332(c)(1). And this approach tends to deviate from circuit practice and Supreme Court precedent. *See Bankers Tr. Co. v. Texas & P. R. Co.*, 241 U.S. 295, 309-10 (1916) (company incorporated under acts of Congress wasn't a citizen of any state); *accord Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 428 (7th Cir. 2009) (citing *Bankers* to note that courts had concluded that federally-chartered savings associations weren't typically citizens of any state). Though the court of appeals has not addressed diversity jurisdiction *vis-à-vis* federally-chartered credit unions, *Am. Airlines Fed. Credit Union v. Eck*, 2018 U.S. Dist. LEXIS 86751, 3 (N.D. Ill. May 23, 2018), it typically hesitates to grant jurisdiction unless a statute explicitly provides for it, *Hukic*,

3

588 F.3d at 428.[1] For example, complete diversity was "impossible" for a federal savings and loan association because it did "not appear to be a citizen of *any* state for purposes of § 1332," defeating complete diversity. *Jenkins v. Martin*, 2006 U.S. App. LEXIS 24835, 5 (7th Cir. Oct. 3, 2006) (citing *Bankers*, 241 U.S. at 295).

Relying on the absence of a statutory provision, other courts have followed a second approach and denied state citizenship for federally-chartered credit unions (and analogous entities). *See Fed. Home Loan Bank of Indianapolis v. Banc of Am. Mortg. Sec., Inc.*, 2011 U.S. Dist. LEXIS 56216, 12-14 (S.D. Ind. May 25, 2011); *Eck*, 2018 U.S. Dist. LEXIS 86751 at 2. These courts have found federally-chartered credit unions ineligible for diversity jurisdiction because they are "stateless 'national citizens.'" *Broadbridge Fin. Sols., Inc. v. CNBS, LLC*, 2016 U.S. Dist. LEXIS 37933, 2 (S.D.N.Y. Mar. 23, 2016); *see also Beaman v. Mountain Am. Fed. Credit Union*, 458 F. Supp.3d 1316, 1320 (D. Utah 2020); *Hayward v. Chase Home Fin., LLC*, 2011 U.S. Dist. LEXIS 78239, 7-8 (N.D. Tex. July 18, 2011).

For no less than three reasons—acknowledging the common hesitancy to assign citizenship to entities when Congress has not done so, the distortion of § 1332's plain language with the first approach, and the general rule that the court cannot exercise subject matter jurisdiction without express authorization from the Constitution or federal statute, *see Qi Qin v. Deslongchamps,* 31 F.4th 576, 582 (7th Cir. 2022)—the court agrees with the majority of courts rather than follows *Navy Fed. Credit Union*, 972 F.3d at 356.

---

[1] While this this case was ongoing, Congress created a statutory provision granting state citizenship for all federally-chartered savings associations, but not credit unions. *Hukic*, 588 F.3d at 428 (citing 12 U.S.C. § 1464(x)).

4

The statute uses "and" rather than "or" to describe the circumstances of citizenship for corporations; and, though the court appreciates that the statute's context for these words tends to introduce some independent float to these dual clauses—namely, that such an entity would have jurisdiction in two locations—the statute likewise presupposes that such an entity would in fact have *both* locations. In short, § 1332(c)(1) applies to corporations that have both a state (or foreign state) of incorporation and a principal place of business. Thus, as oft-repeated in the law, a corporation covered by § 1332(c)(1) has "dual" citizenship.[2] *See Smoot v. Mazda Motors of Am., Inc.*, 469 F.3d 675, 676 (7th Cir. 2006). And the law has been exacting in applying this dual-citizenship rule to true-blue corporations. *See Carden v. Arkoma Assocs.*, 494 U.S. 185, 187-96 (1990). It does not apply to federally-chartered credit unions. *See Bankers*, 241 U.S. at 309-10; *Hukic*, 588 F.3d at 428. The court won't warp the statute into a "choose your path to citizenship" freeway and find that NDFCU is a citizen of Indiana solely by virtue of qualifying for one onramp of having a principal place of business. After all, the court cannot create a basis for jurisdiction by judicial decree. *See Qi Qin*, 31 F.4th at 582.

StarNet and Berkley next argue that the localized activities exception applies. It doesn't. The localized activities exception grants citizenship "if activities [are] localized in one state." *Hukic*, 588 F.3d at 428 (collecting cases). When a "federal corporation's business is localized within a single state . . . [the corporation is] deemed a citizen of the state in which its business is conducted." *Schneiderman v. Am. Chem. Soc'y*, 2021 U.S. Dist. LEXIS 215964, 5 (E.D.N.Y. Sept. 28, 2021). The exception has been used even when some out-of-state business occurs. *See, e.g.*,

---

[2] Even the circuit's appellate rules anticipate that, for a corporation, it must identify "both the state of incorporation and the state in which the corporation has its principal place of business," 7th Cir. App. R. 28(a)(1), and most assuredly a corporation would not be given a choice on appeal to identify only one. The first approach would permit such a practice.

*Loyola Fed. Sav. Bank v. Fickling*, 58 F.3d 603, 606 (11th Cir. 1995). The law considers many factors to determine where business activities are localized including "the corporation's principal place of business, the existence of branch offices outside the state, the amount of business transacted in different states, and any other data providing evidence that the corporation is local or national in nature." *Id.*

Even under this exception, NDFCU isn't an Indiana citizen. The credit union is based in Indiana [23-1 PDF 59 (Ex. C)] with 12 branches located here [24-1 at 10-17].[3] But NDFCU maintains at least three out of state branches, with a fourth set to open soon in Michigan [*id.*]. Maintaining branches outside the state tends to foreclose this federally-chartered credit union from establishing state citizenship because it prevents it from being "peculiarly local" enough to warrant citizenship. *See Gilpin v. CU Capital Mkt. Sols., LLC*, 2021 U.S. Dist. LEXIS 173097, 9-10 (D. Nev. Sept. 10, 2021) (citing *Feuchtwanger Corp. v. Lake Hiawatha Fed. Credit Union*, 272 F.2d 453, 455 (3rd Cir. 1959)). NDFCU isn't comparable to a credit union with branches in one single state. *See Arlington Cmty. Fed. Credit Union v. Berley Reg'l Ins. Co.*, 57 F. Supp.3d 589, 590-91 (E.D. Va. 2014). NDFCU maintains three branches in Arizona [24-1 at 10-17]. Additionally, NDFCU has national reach—over 4,000 shared branch locations and 30,000 charge-free ATMs [24 at 7]. *See Eck*, 2018 U.S. Dist. LEXIS 86751 at 7-9. Any U.S. citizen or resident alien can join NDFCU from different states given NDFCU's 1,200 affiliated organizations and online registration capabilities [24 at 8; 24-2]. *See also Eck*, 2018 U.S. Dist. LEXIS 86751 at 6. Many of these affiliated

---

[3] There seems some discrepancy in the number of total NDFCU branches and the number of branches in Indiana presented to the court. The complaint alleges that 8 of 10 branches are located in Indiana [1 ¶ 11]. Mr. Dilley's briefing claims there are at least two branches in Arizona and one in Michigan [24 at 7]. The plaintiffs say 80 percent of NDFCU's branches are in Indiana [23 at 4]. The court accepts the Credit Union Profile Form 4501A and finds that there are three locations in Arizona and one opening soon in Michigan (as of the time of briefing) [23-1 at 49-56 (Ex. B); 24-1 at 10-17].

organizations are outside Indiana [24-2]. Its website does not explicitly limit membership to any geographic area. NDFCU serves and seeks to serve citizens nationwide, not just those located in Indiana.

And NDFCU's out of state locations are not outliers in its business model. *Cf. Loyola*, 58 F.3d at 606. The credit union serves members nationwide by offering online and mobile banking for all members no matter their location. This means members can make payments in any state at any time. This online and mobile banking necessarily results in out-of-state business. *See Parks Heritage Fed. Credit Union v. Fiserv Sols., Inc.*, 2017 U.S. Dist. LEXIS 1491, 14-16 (S.D.N.Y. Jan. 4, 2017). NDFCU has established a "variety of capabilities that permit . . . members to use its financial services outside the state." *Id.* at 14. According to its website, quite aside from its 30,000 charge-free ATMs, NDFCU issues Visa cards that function worldwide with account access from any location. *Id.* at 5-6. NDFCU's nationwide reach means it isn't localized in Indiana and doesn't qualify for the localized activities exception.

Accordingly, the court GRANTS Mr. Dilley's motion to dismiss under Rule 12(b)(1) [21] and DISMISSES the case without prejudice.

SO ORDERED.

January 24, 2025                                             *s/ Damon R. Leichty*
                                                             Judge, United States District Court